Filed 7/13/99 by Clerk of Supreme Court

IN THE SUPREME COURT

STATE OF NORTH DAKOTA

1999 ND 127

Jolynn Nicole Ringsaker, Petitioner and Appellee

v.

Director, North Dakota

Department of Transportation, Respondent and Appellant

No. 980369

Appeal from the District Court of Cass County, East Central Judicial District, the Honorable Norman J. Backes, Judge.

AFFIRMED.

Opinion of the Court by VandeWalle, Chief Justice.

Laura Wick Loberg (argued), 341 Central Avenue North, Valley City, ND 58072 and Cash H. Aaland, 1024 Third Avenue South, P.O. Box 1817, Fargo, ND 58107, for petitioner and appellee.

Candace A. Prigge, Assistant Attorney General, Office of Attorney General, 900 East Boulevard Avenue, Bismarck, ND 58505-0041, for respondent and appellant.

Ringsaker v. Dir., ND Dept of Transportation

No. 980369

VandeWalle, Chief Justice.

[¶1] The North Dakota Department of Transportation (Department) appealed from a district court judgment reversing the administrative hearing officer’s decision to suspend Jolynn N. Ringsaker’s driving privileges for ninety-one days for driving under the influence of alcohol.  We affirm.

[¶2] North Dakota Highway Patrol Trooper Tanya Sprecher arrested Ringsaker for driving under the influence of alcohol.  Ringsaker was transported to the Fargo Police Department where she consented to an Intoxilyzer test.  The Intoxilyzer test administered by Trooper Sprecher recorded Ringsaker’s blood alcohol concentration at .11 percent by weight.  A Report, Notice and temporary operator’s permit was issued to Ringsaker under N.D.C.C. § 39-20-03.1(1).  Ringsaker requested and received an administrative hearing.

[¶3] During the hearing, Trooper Sprecher testified she followed the state toxicologist’s approved method for conducting a breath test.  According to Trooper Sprecher, when the Intoxilyzer machine is working properly it prints the testing date in numerical form.  However, in the present case, the Intoxilyzer machine incorrectly printed “22/*0/17” where the date should have been.  Trooper Sprecher stated she was not aware of this until the hearing.  Over the objection of Ringsaker’s attorney, the hearing officer admitted the Intoxilyzer test result into evidence.  At the conclusion of the administrative hearing, the hearing officer issued his findings of fact, conclusions of law and decision suspending Ringsaker’s driving privileges, determining:

The Intoxilyzer incorrectly printed the date of the test.  The approved method requires that if the test information printed is not legible the test information should be reprinted.  The test information on Exhibit 11 is legible.  There is no difficulty in reading the information printed by the Intoxilyzer.  For some reason the date is not accurate.  However Exhibit 11 is the test information from the test conducted on Ms. Ringsaker by Trooper Sprecher on June 24, 1998.

  

[¶4] Ringsaker appealed to the district court which reversed the license suspension.  The district court’s order read:  “This Court is of the opinion that the State’s failure to establish an accurate date on the results of the alcohol concentration test creates a doubt.  However small that doubt may be as to the correctness of the entire test, this Court cannot conclude that the test was fairly administered.”  The Department appealed to this Court.

[¶5] The Administrative Agencies Practices Act, N.D.C.C. ch. 28-32, governs the review of administrative license suspensions.  
Luebke v. North Dakota Dept. of Transp.
, 1998 ND 110, ¶ 8, 579 N.W.2d 189.  Our review is limited to the record before the agency, and we do not review the decision of the district court.  
Id.
  Section 28-32-19, N.D.C.C., requires us to affirm the agency’s order unless we find any of the following:

. The order is not in accordance with the law.

2. The order is in violation of the constitutional rights of the appellant.

. Provisions of this chapter have not been complied with in the proceedings before the agency. 

4. The rules or procedure of the agency have not afforded the appellant a fair hearing.

. The findings of fact made by the agency are not supported by a preponderance of the evidence.

. The conclusions of law and order of the agency are not supported by its findings of fact.

Id.
  When reviewing the agency’s factual findings, we do not make independent findings of fact or substitute our judgment for that agency, but determine only whether a reasoning mind reasonably could have determined the factual conclusions were proven by the weight of the evidence from the entire record.  
Borowicz v. North Dakota Dept. of Transp
., 529 N.W.2d 186, 187 (N.D. 1995).  

[¶6] The Department contends Ringsaker failed to show the scientific reliability of the test was affected by the Intoxilyzer machine not printing the accurate date on the test record.

[¶7] Section 39-20-07(5), N.D.C.C., governs the admissibility of Intoxilyzer test results.  The statute provides, in pertinent part,:

The results of the chemical analysis must be received in evidence when it is shown that the sample was properly obtained and the test was fairly administered, and if the test is shown to have been performed according to methods and with devices approved by the state toxicologist, and by an individual possessing a certificate of qualification to administer the test issued by the state toxicologist.

The purpose of section 39-20-07, N.D.C.C., is to ease the requirements for the admissibility of chemical test results while ensuring that the test upon which the results are based is fairly administered.  
See, e.g.,
  
Kummer v. Backes
, 486 N.W.2d 252, 255 (N.D. 1992).

[¶8] In 
Moser v. North Dakota State Highway Com’r
., 369 N.W.2d 650, 653 (N.D. 1985), we discussed the foundational requirements necessary to show a breathalyzer test is “fairly administered”:

The foundational requirements . . .  may be met either through testimony of the state toxicologist or through the introduction of certified copies of approved methods and techniques filed by the state toxicologist with the clerk of the district court pursuant to N.D.C.C.  § 39-20-07.  Absent testimony by the state toxicologist, the foundational requirement necessary to show fair administration of a breathalyzer test and admissibility of the test results is a showing that the test was administered in accordance with the approved methods filed with the clerk of the district court.  Thus, reliability and accuracy of the results are established by demonstrating compliance with the methods adopted by the state toxicologist.  Because the statute permits admission of such evidence without expert witness testimony to establish accuracy and reliability, all the requirements of the statute must be scrupulously met to ensure a uniform basis of testing throughout the State and fair administration.

(Citations omitted); 
See also
 
State v. Schwalk
, 430 N.W.2d 317, 323 (N.D. 1988).  Therefore, without strict compliance with the approved method, the scientific accuracy of the test cannot be established without expert testimony.  
Bryl v. Backes
, 477 N.W.2d 809, 813 (N.D. 1991).  When the state toxicologist testifies at trial, that testimony takes precedence over the approved methods.  
State v. Puhr
, 316 N.W.2d 75, 77 (N.D. 1982).

[¶9] The relevant portion of the Approved Method to Conduct Breath Test with Intoxilyzer provides, in part,:

The printer will print the test information on the Form 106-I, feed it out of the instrument, and “Test Complete” will appear on the display.  Remove the Form 106-I and observe for legibility.  If the printing is legible the operator should sign the Form 106-I.  After taking the Form 106-I out of the Intoxilyzer the displays will alternate between a scrolled instruction of “Push Start Test Switch to Reprint Card” and a flashing directive of “Reprint Card”.  If the printed Form 106-I is illegible press the “Start Test” switch.  When the display reads “Insert Test Record” place a new Form 106-I in the Intoxilyzer.  The printer will print the test information on the new Form 106-I and feed it out of the instrument.  Remove the second Form 106-I from the instrument and transfer the information from the first to the second Form 106-I, sign both and retain for evidentiary purposes.  

The approved method does not indicate whether the operator of the Intoxilyzer test should observe the date for legibility.  Rather, it broadly states “[r]emove the Form 106-I and observe for legibility.  If the printing is legible the operator should sign the Form 106-I.”  The approved method does not define the term “legible.”   

[¶10] The date is part of the result reported by the machine test.  Although the date is not the essential result of the test, when the date fails to print accurately, it raises questions regarding the trustworthiness of the entire test result.  The concern is aptly stated in the hearing officer’s observation that “[f]or some reason the date is not accurate.”   No evidence explains that reason nor is there any evidence that the inaccurate date does not also reflect on the accuracy of the blood alcohol result.

[¶11] It is the Department’s burden to prove the Intoxilyzer test was fairly administered.  
See
, 
e.g.
, 
Kobilansky v. Liffrig
, 358 N.W.2d 781, 790 (N.D. 1984) (stating the “customary common law rule that the moving party has the burden of proof is generally observed in administrative hearings.”)  Therefore, where questions exist regarding the approved method, the State Toxicologist or an authorized deputy should clarify or explain the approved method and whether or not the variance could have affected the blood alcohol test result.  
State v. Guthmiller
, 350 N.W.2d 600, 602 (N.D. 1984) (stating that mistakes made by administering officer which might have precluded admissibility of test result are overcome by State Toxicologist’s testimony that mistakes had insignificant effect on result). 

[¶12] The Department argues this case is identical to 
Berger v. State Highway Com’r
., 394 N.W.2d 678 (N.D. 1986), where this Court rejected the argument an Intoxilyzer test was not fairly administered or scientifically reliable because the driver failed to present any evidence the approved method was incomplete or unscientific.  In 
Berger
, we stated:  “once the State Toxicologist’s approved method is followed the driver must do more than raise the possibility of error.”  
Berger
, 394 N.W.2d at 686 (citing 
Dodds v. North Dakota State Highway Com’r.
, 354 N.W.2d 165, 170 (N.D. 1984)).  We, therefore, concluded:  “he [Berger] could, and probably should, have challenged the approved method with expert testimony.  He could, and probably should, also have subpoenaed the State Toxicologist and challenged the approved method through cross examination if he believed the approved method to be faulty.”  
Id.
 

[¶13]  Unlike 
Berger
, the Department, in this case, failed to make a prima facie showing the approved method has been followed.  No one from the State Toxicologist’s office clarified or explained whether the approved method requires the date be read for legibility or provided a definition for the term “legible.”  Moreover,   no one testified as to whether a connection exists between an inaccurate date on the test record and the results of the test.  The present case is also distinguishable because the alleged error in the approved method is on the face of the test record.  In 
Berger
, the driver merely speculated an error existed in the testing procedures. 

[¶14]   There was no expert testimony on the effect, if any, of the incorrect test date on the accuracy of the blood alcohol result.  Nor was there any expert testimony as to whether or not the inaccurate test date was caused by the testing operator deviating from the approved method.  The Department thus failed to sustain its burden to show the test was fairly administered.  As a consequence, the Intoxilyzer test result should not have been admitted into evidence under section 39-20-07(5), N.D.C.C. 

[¶15] The judgment of the district court reversing the administrative suspension of Ringsaker’s license is affirmed.

[¶16] Gerald W. VandeWalle, C.J.

Carol Ronning Kapsner

Mary Muehlen Maring

William A. Neumann

Dale V. Sandstrom